# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ) | Case No. _____ |
| ) |  |
| ) |  |
| **UNITED STATES OF AMERICA,** *ex rel.* ) | **COMPLAINT FOR** |
| [UNDERSEAL]                          ) | **VIOLATIONS OF THE FALSE** |
| ) | **CLAIMS ACT, 31 U.S.C. §§ 3729,** |
| ) | ***ET SEQ.*, TITLE VII OF THE** |
| **Plaintiff,**          ) | **CIVIL RIGHTS ACT OF 1964, 42** |
| ) | **U.S.C. § 2000e,** ***ET SEQ.*, THE** |
| ) | **DISTRICT OF COLUMBIA** |
| ) | **HUMAN RIGHTS ACT, D.C.** |
| v.                                    ) | **CODE §§ 2.1401.01** ***ET SEQ.*,** |
| ) | **SECTION 828 OF THE 2013** |
| ) | **NATIONAL DEFENSE** |
| ) | **AUTHORIZATION ACT, 41** |
| [UNDERSEAL]                          ) | **U.S.C. § 4712** ***ET SEQ.*** |
| ) |  |
| ) | **FILED UNDER SEAL** |
| **Defendant.**          ) |  |
| ) | **JURY TRIAL DEMANDED** |
| ) |  |
| ) |  |

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*Anonymous v. Anonymous*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* CORINNE OMWENGA 12611 Misty Meadow Place Germantown, MD 20874 | Case No. _____ |
| **Plaintiff,** | **COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT, 31 U.S.C. §§ 3729, *ET SEQ.*, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *ET SEQ.*, THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT, D.C. CODE §§ 2.1401.01 *ET SEQ.*, SECTION 828 OF THE 2013 NATIONAL DEFENSE AUTHORIZATION ACT, 41 U.S.C. § 4712 *ET SEQ.*** |
| v. | |
| UNITED NATIONS FOUNDATION 1750 Pennsylvania Avenue NW Suite 300 Washington, DC 20006 | |
| Serve: National Registered Agents, Inc. 1015 15th Street NW, Suite 1000 Washington, DC 20005 | **FILED UNDER SEAL** |
| **Defendant.** | **JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      Qui tam relator Corrine Omwenga ("Relator" or "Omwenga"), by her attorneys, individually and on behalf of the United States of America, files this complaint against Defendant United Nations Foundation, Inc. ("Defendant" or "UNF") to recover damages, penalties, and attorneys' fees for violations of the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA" or "False Claims Act"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the District of Columbia Human Rights Act, D.C. Code § 2.1401.01 *et seq.* ("DCHRA"), and Section 828 of the 2013 National Defense Authorization Act, 41 U.S.C. § 4712 *et seq.* ("NDA").

2.      Relator is a 42-year-old black female from Kenya.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

3.      Defendant is a non-profit foundation that helps to foster the relationship between the United States and the United Nations.  To achieve this mission, Defendant receives funding in the form of grants from the United States government, including USAID.

4.      Defendant's main office is located in Washington, DC, but it also has a satellite office in New York, NY.

5.      Relator applied for a director level position with Defendant on June 30, 2014. Relator never received a response to her application.  Defendant hired a white male in his mid-thirties who is less-qualified than Relator for this position.

6.      On July 9, 2014, Relator was asked to interview for a Compliance Officer position with Defendant.  Relator was offered and accepted this position, which paid less than the director-level position to which Relator originally applied.

7.      While working as a Compliance Officer at Defendant's Washington, DC office, Relator witnessed and reported multiple violations of the rules and regulations governing the use of United States government (USG) funds.

8.      Relator also reported that she was receiving disparate treatment because she was performing work at a director-level position, and yet she had a salary and title below a director-level position.

9.      After making efforts to stop the fraudulent practices and being rebuffed by management, Relator was fired in retaliation for her complaints.

10.      In violation of 31 U.S.C. § 3729(a)(1)(A), Defendant submitted or caused to be submitted false claims when they drew down on USG funds for expenses and fees that were not complaint with the rules and regulations governing the use of USG funds.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

11.     In violation of 31 U.S.C. § 3729(1)(1)(B), Defendant knowingly made and presented false claims for payment to the government when they drew down on USG funds for expenses and fees that were not complaint with the rules and regulations governing the use of USG funds.

12.     In violation of 31 U.S.C. § 3730(h), 41 U.S.C. § 4712, and District of Columbia Public Policy, Defendant terminated Relator because of Relator's protected conduct in reporting the above violations.

13.     In violation of D.C. Code § 2-1401, *et seq.* and 42 U.S.C. § 2000e-2, *et seq.*, Defendant discriminated against Relator based on her race, national origin, sex, and/or age when it failed to promote her to a director-level position and terminated her.

14.     In violation of D.C. Code § 2-1401, *et seq.* and 42 U.S.C. § 2000e-2, *et seq.*, Defendant terminated Relator because of Relator's protected conduct in reporting discrimination based on her race, national origin, sex, and/or age.

15.     The latest contract between Defendant for USG funds from USAID began in October 2014 and is worth $20,000,000.

16.     Based on information Defendant witnessed during her employment with Defendant, Relator estimates that the fraud from September 2014 to February 2015 was $3,636,272.76.

17.     To Relator's knowledge, Defendant's fraud remains ongoing through to the present.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this is an action arising under the laws of the United States, specifically Title VII

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"), Section 828 of the 2013

National Defense Authorization Act, 41 U.S.C.A. § 4712 et seq. ("NDAA"), and the False

Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA").

19.     This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. §

3732(a) because the Defendant transacts business in this judicial district.

20.     Venue is proper in this Court under 28 U.S.C. § 1391(c) and 1395(a), and 31

U.S.C. § 3732(a) because the complained of illegal acts occurred within this judicial district and

because the Defendant transacts business within this judicial district.

21.     On February 25, 2015, Relator Omwenga filed a complaint of discrimination and

retaliation on the basis of race, sex, national origin, and age with the U.S. Equal Employment

Opportunity Commission ("EEOC").

22.     The EEOC issued Relator a Notice of Right to Sue on March 3, 2015.

23.     This Complaint and Demand for Jury Trial is timely filed within the ninety day

period afforded by 42 U.S.C. §§ 2000e-5(f)(1).

## PARTIES

24.     Relator Omwenga is a resident of Montgomery County, Maryland.

25.     Relator is a 42-year-old black female, U.S. permanent resident who was born in

Kenya and immigrated to the United States.

26.     Relator is an "original source" of this information within the meaning of 31

U.S.C. § 3730(e)(4)(B) and states that to her knowledge, the information contained herein has

not been publicly disclosed.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

5

27.     Relator has a Master's degree in Science from the University of Maryland System.  Prior to joining Defendant, Relator spent many years working with nonprofit organizations and working with grants from USAID and other government entities.

28.     Defendant hired Relator as a Compliance Officer.  At all times material to this complaint, Relator was employed by Defendant at its Washington, DC location.

29.     Relator has firsthand knowledge of Defendant's fraudulent business practices.

30.     Defendant terminated Relator's employment in February 2015.

31.     Defendant UNF is a US non-profit foundation found in 1998.

32.     Defendant regularly transacts business in this judicial district out of its headquarters at 1750 Pennsylvania Avenue NW, Suite 300, Washington, DC 20006.

33.     Relator is an "employee" and Defendant is an "employer" as the terms are defined by the False Claims Act.

## FACTUAL ALLEGATIONS

*Regulations Governing Use of USAID Funds.*

34.     For USG funded projects, Defendant follows the cost principles presented in 2 C.F.R. § 230.

35.     "These principles shall be used by all Federal agencies in determining the costs of work performed by non-profit organizations under grants, cooperative agreements, cost reimbursement contracts, and other contracts in which costs are used in pricing, administration or settlement." 2 C.F.R. § 230.20.

36.     For costs to be allowable under a grant, the costs must be "reasonable," "allocable," and "be accorded consistent treatment."  2 C.F.R. § 230(A)(2).

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

6

37.    "In determining the reasonableness of a given cost, consideration shall be given to: [a] Whether the cost is of a type generally recognized as ordinary and necessary…[c] Whether the individuals concerned acted with prudence in the circumstances…[d] Significant deviations from the established practices of the organization."  2 C.F.R. § 230(A)(3).

38.    A cost is allocable if it: "(1) Is incurred specifically for the award.  (2) Benefits both the award and other work…or (3) Is necessary to the overall operation of the organization." 2 C.F.R. § 230(A)(4)(a).

39.    Any cost allocable to one award may not be shifted to other Federal awards to overcome funding deficiencies, or to avoid restrictions imposed by law or by the terms of the award under 2 C.F.R. § 230(A)(4)(b).

40.    In determining the allowability of costs for consulting services, a variety of factors are considered under 2 C.F.R. § 230(B)(37)(b), including the nature and scope of the work, the necessity of contracting with a consultancy, and the "adequacy of the contractual agreement for the service (*e.g.*, description of the service, estimate of time required, rate of compensation, and termination provisions)."

41.    Under 2 C.F.R. § 230(b)(51)(c), first class air travel is not an allowable cost.

42.    For USG funded projects, Defendant follows the administrative requirements for grants with non-profits in 2 C.F.R. § 215.

43.    Under 2 C.F.R. § 215.12(b), UNF is required to use form SF-424 in requesting funds from USAID.

44.    Under 2 C.F.R. § 215.28, "Where a funding period is specified, a recipient [of USG funds] may charge to the grant only allowable costs resulting from obligations incurred during the funding period and any pre-award costs authorized by the Federal awarding agency."

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

45.     "No employee, officer, or agent shall participate in the selection, award, or administration of a contract supported by Federal funds if a real or apparent conflict of interest would be involved." 2 C.F.R. § 215.42.

46.     All procurements related to USG funds are required to "be conducted in a manner to provide, to the maximum extent practical, open and free competition…Solicitations shall clearly set forth all requirements that the bidder or offeror shall fulfill in order for the bid or offer to be evaluated." 2 C.F.R. § 215.43.

47.     All recipients of USG funds are required to establish written procurement procedures. 2 C.F.R. § 215.44. At a minimum, these procedures must include, *inter alia*, "(3)(i) a clear and accurate description of the technical requirements of the material, product or service to be procured…(ii) Requirements which the bidder/offeror must fulfill and all of factors to be used in evaluating bids or proposals. (iii) A description, whenever practicable, of technical requirements in terms of functions to be performed or performance required."

48.     If there is no competitive bid or offer process for a procurement over the small purchase threshold ($25,000), then the procurement records must include justification for the lack of competition under 2 C.F.R. § 215.46.

***Creation of the Compliance Officer Position.***

49.     On a day-to-day basis, Defendant is responsible for putting proper expense and procurement procedures in place for spending USG funds.

50.     When Defendant needs to pay for any expense, fee, or procurement owed to a third party, Defendant draws down on funds from USAID. Defendant then pays the third party.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

8

51.     Once a year in May, Price Waterhouse Coopers ("PWC") undertakes the single audit (formerly OMB A-133 Audit) to ensure that Defendant utilizes proper procedures throughout the year.

52.     In May 2014, PWC audited Defendant.

53.     PWC only audits select projects.  PWC has discretion to choose which projects will be audited based on criteria set forth in OMB A-133 and on the schedule of federal expenditure submitted by Defendant.

54.     PWC found that Defendant was not fully complaint with the rules and regulations governing the use of USG funds.  Specifically, PWC mentioned internal weaknesses in Defendant's internal controls, labor allocations and procurement procedures for the federally funded projects that were audited.  While there were no negative written findings, PWC orally conveyed that Defendant needed to hire someone to ensure compliance.

55.     In response, Defendant created the position of Compliance Officer, whose duties were to ensure that projects receiving USG funding were fully complaint with the rules and regulations governing the use of USG funds.

***Relator is Passed Over for a Director-Level Position.***

56.     On June 30, 2014, Relator applied for a Director-level position with Defendant, but did not receive a response to this application.  This position paid at least $125,000 per year.

57.     On July 9, 2014, Defendant contacted Relator and asked her to interview for the Compliance Officer position.  Relator did not apply for this position.

58.     Relator interviewed with David Burton, Executive Director of Business Services, Budgets and Reporting ("BSBR"), Lara Sonti, Counsel and Senior Director of the Contracts

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

9

department, and Beth Bowers, Associate from the strategic team.  Relator also had a second interview with Walter Cortés, the Chief Financial Officer.

59.     Defendant offered Relator as position as Compliance Officer with a salary of $82,000 per year.

60.     Relator accepted the offer and began working shortly thereafter.

61.     During Relator's orientation period, she met Andrew McDermott, who was recently hired by Defendant to fill the Director-level position that Relator applied for.

62.     McDermott is a Caucasian male in his mid-thirties.  McDermott holds a Bachelor's degree.  He never worked for a non-profit and had no experience handling government funds prior to his employment with Defendant.

63.     Relator is a black female in her early forties.  Relator holds a Master's degree. Relator has many years of experience with nonprofit organizations and working with grants from USAID and other government entities.

64.     Relator heard rumors that McDermott was "politically-connected" and this is why he was hired.

65.     When Relator was hired, all other BSBR employees were Caucasian.

66.     Shortly after Relator started, she was told by at least three of her colleagues, Caroline (Last Name Unknown), Bernadette Frances and Demika (Last Name Unknown), Assistant to the HR Executive director, that they were shocked that a black person was hired in the BSBR department.

67.     One of Relator's coworkers told Relator, "You must have been so qualified for the Compliance Officer position, because the BSBR department does not usually hire people like you."  Relator took "people like you" to mean black people.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

***Relator Creates and Puts in Place Policies and Procedures to Administer USG Funds.***

68.     In October 2014, Defendant received a $20,000,000 grant for the USAID Mobile Hub project.

69.     McDermott was named financial manager for the award.  Relator was assigned to work with the Mobile Hub project, as with all USG funded projects, as the Compliance Officer.

70.     As part of her job, Relator developed policies and procedures for Defendant on how to manage and administer USG awards.

71.     The new policies and procedures developed by Relator were approved by the Cortés (CFO) and Burton (Executive Director) and circulated throughout the organization.

72.     Relator also initiated the creation of a website on Defendant's intranet where she posted and continually updated policies, procedures and required forms for the administration of USG funds that could be easily accessed by all employees.  These documents covered the administration of USG funds awarded to Defendant by different government agencies, including USAID.

73.     All procurements funded by USG awards were required to go through Relator before going to the Contracts department.  This was so Relator could perform due diligence on selected vendors, and to ensure that all procurement requirements as outlined in the Defendant's procurement policies and procedures were met, before the vendor contract was drawn up.

74.     In September and October 2014, Relator put on presentations to introduce these new procedures.  The presentation took place at Defendant's DC office and was broadcast to Defendant's satellite office in New York.  About 60-100 staff attended Relator's presentation.

75.     After the presentation, Relator passed by McDermott, who was standing near the door. McDermott asked, "How do we know that what you presented was true and you were not

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

11

just making up stuff as you went along?" McDermott's face was red and it appeared that he may have been offended, perhaps thinking the information presented should have been delivered by him.

76.    Relator laughed him off, replying that "You must be kidding."

***Relator Receives Positive Feedback.***

77.    In or around October 2014, a new position for a Grants Manager was posted on Defendants' website to work on the new USAID Mobile Hub grant.

78.    Relator approached David Burton, Executive Director, BSBR department, and proposed that Relator's job be combined with this new position.

79.    Relator thought that her solution would save the BSBR department and the Agency some money and would better utilize her skills.

80.    However, Defendant did not want to go this route and hired someone else in the Grants Manager role that seemed to have strong expertise on paper.  However, once she started, it was clear the new Grants Manager was either less than competent or unwilling to follow the required regulations.

81.    In November 2014, Burton provided Relator with her three month review, indicating that he and Defendant were pleased with Relator's work.

***Unallowable Expenses and Problems with McDermott.***

82.    About one month into the USAID project, it was clear that McDermott did not know basic information about financial management of US funded projects.  For example, McDermott is on record seeking clarification from the Realtor as to whether a project work plan was what was used to draw down on US funded projects.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

12

83.     McDermott also asked Relator how to do basic tasks, such as how to allocate budget costs for the Mobile Hub project.

84.     Relator was amazed that McDermott could not figure out where to find budget information, even though the award document was sent directly to him and was also on the Defendant's common computer drives. Even when directed to the master award, McDermott could not identify where in the award document to find budget information, indicating he had limited understanding of the award document.

85.     In December 2014, Relator learned that Defendant charged unallowable expenses to a USAID funded sub-award project CH-MHA-13.

86.     Relator documented her concerns that Defendant was attempting to charge unallowable expenses against the government grant.

87.     On December 5, 2014, Relator sent an e-mail to Camila Campo, copying Cortés and Burton, in which Relator pointed out illegal transactions for project CH-MHA-13, including transactions charging unauthorized personnel time to a USAID contract. The contract specified personnel who were eligible to directly charge the project.

88.     McDermott directed his staff to allocate expenses to non-existence "phantom" projects. Once new project funding came in, McDermott instructed his staff to shift the phantom project expenses to the new project.

89.     McDermott continued to display his lack of knowledge. Campo reported directly to McDermott and received instructions from McDermott to start posting excess transactions from CH-MHA-13 to a new USAID sub award, CH-MAM-02. This award's funding supposedly started in August 2014, but it was not yet issued as of December 2014, and was not even executed as of February 2015. CH-MAM-02 was a phantom project.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

13

90.     Relator expressed concerns about the practice of posting transactions to projects whose award documents were not yet issued, and was advised that it was common practice in the organization.

91.     On December 9, 2014, McDermott e-mailed Relator asking whether a project work plan was the "document we have been waiting for them to bless and accept so we can start creating a monthly drawn down for the USAID funds?"

92.     Relator responded to McDermott, copying Cortés and Burton, explaining that the document McDermott was referring to was a "work plan" and "not what we have been waiting for to draw down on USAID funds."

93.     In her response, Relator also included additional information that should have been incorporated into the work plan McDermott sent in his original e-mail.

94.     In response to Relator's e-mail, Cortés, the CFO, thanked Relator for her "great guidance" and for telling McDermott how to do his job.

95.     McDermott's staff continued coming to Relator, complaining that McDermott did not know basic information about budget allocation of federal funds or appropriate recording of time on project timesheets, and asking Relator for help.

96.     Relator had to show McDermott and his staff how to set-up and interpret budgets and the basics of budget formatting for USAID projects.

97.     Around mid-December 2014, in response to McDermott's struggle to understand the basics managing USG funds, Walter Cortés, Defendant's Chief Financial Office ("CFO"), called a meeting.

98.     At this meeting, McDermott complained, "No one will show me the budget." McDermott tried to pass the blame onto Relator for McDermott's lack of knowledge.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

99.     After the meeting, Relator spoke with Cortés.  Cortés told Relator, "Corinne, watch your back.  He's after you.  Try to work with him."

100.    In or around November 2014, Relator met with the Burton in the presence of Rick Parnell, Chief Operating Office ("COO"), who wanted to know if the Executive Officers could charge their time to the USAID funded Mobile Hub project.  Typically, Executive Officer Salaries are charged to the overhead cost pool.  The COO wanted to know if they could directly charge the project.  Relator responded that such costs would be unallowable.

***Relator Requests a Promotion.***

101.    After receiving many of these requests for help from McDermott's staff, Relator went to the human resources department and spoke to Maxine Somerville, Executive Director for HR, and asked, "Why was I not selected for the director position, yet I'm clearly more qualified than McDermott?"

102.    Realtor explained to Somerville that Relator, like McDermott, reported to the BSBR Executive Director and did work that was at least equivalent to the work of other directors including providing McDermott directions on how to perform his duties.

103.    There were five employees that reported directly to the BSBR Executive Director.  Relator was one of them.  The other four were Caucasian and all held the title of "Director."

104.    Relator requested a change in title and "appropriate compensation."

105.    On December 11, 2014, Relator sent an e-mail to Maxine Somerville, summarizing their conversation regarding concerns about her duties and compensation. In this e-mail, Relator stated that she felt she was receiving "disparate treatment."

106.    Relator explained that she was the only employee who reported to the Executive Director of BSBR that did not have the title of "Director."

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

107.    Relator stated that she was not in a "supporting" role but rather was providing direction.  Relator suggested that her directing people with titles higher than her own could cause resentment towards her.

108.    Furthermore, Relator indicated in her email, that employees in the BSBR department with less experience than Relator had the same title as Relator, which was "Officer."

109.    Relator also had also discussed her concerns about her role within the organization with David Burton and requested a changed in title and appropriate compensation.

110.    Burton showed no hostility to Relator's request, but he did not take action. Burton told Relator that the two of them would discuss Relator's role during her upcoming performance evaluation.

111.    In mid-December, Relator went home to Kenya for the holidays.

112.    On January 14, 2015, Relator returned to the office.  Upon her return, Relator prepared her self-evaluation for her annual review.

113.    On January 23, 2015, Relator received an e-mail from Maxine Somerville, Executive Director of Human Resources, indicating that she spoke to Burton about Relator's work concerns detailed in her e-mail to HR dated December 11, 2014. Somerville was inquiring if Relator and Burton had met to discuss her concerns.

114.    During the last week of January 2014, just before the annual review was due to Burton, Relator asked Burton if he had had a chance to read Relator's concerns sent to Somerville.  Burton told Relator that he would discuss her proposed title change when they met to discuss her annual review in February.  Burton asked Relator to include any challenges and suggestions for her job on her written annual review, which Relator did.  Burton indicated that he and Relator would also discuss any other issues she had concerning her job.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

115.    Relator's employee written annual review was due to Burton on January 30, 2015. She submitted it on time. Burton scheduled the discussion on her annual review for February 13, 2015.  Burton later pushed the review back to February 18.  The last day for the reviews was February 20.

***Relator Again Report Misuse of USG funds.***

116.    In January 2015, Relator pulled up the project financial transaction reports for the October – December 2014 period for the USAID funded Mobile Hub project, as required for the quarterly audits.

117.    Relator found over $100,000 in procurements and transactions that were legally impermissible charged to the USAID funded mobile hub project.

118.    Relator asked the Grants Manager, Koki Hurley, for backup documentation, which was never provided.

119.    Hurley replied that the contract was drawn up in July 2014, before the start of the award on October 2014, and it was therefore not subject to USAID rules and regulations.

120.    Realtor was puzzled by Hurley's response because if that was the case, then charging those costs to the USAID project awarded in October 2014 clearly made those financial transactions unallowable and unallocable because they were not related to the project award.

121.    In addition, many of these transactions that had already been approved and paid to the vendor were in relation to business development activities that occurred prior to award period of performance, which started on October 1, 2014.

122.    These kinds of expenses were generally non-allowable because they are classified as business development/fund raising activities, which are not allocable to US government awards.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

123.    Furthermore many of these financial transactions included procurements over the small purchase threshold set by Defendant at $ 5,000 and which were required to go through the procurement process before a contract was drawn up, let alone paid. As evidenced by records, Defendant's procurement procedures were not followed.

124.    Rather than correcting the problems, Relator initially received "pushback" when she reported the problems.

125.    Later, McDermott came to Relator and apologized, saying that he should have spoken to Relator before he authorized for payment and signed off on procurement contracts for non-allowable expenses.

126.    As January progressed, Relator began to look deeper into how UNF accounted for all USG funded project costs.

127.    On the USAID (Mobile Hub) grant, for Oct-Dec 2014 expenses, Relator learned that Defendant had certified and submitted the Federal Financial Report, SF-425, to the government containing the unallowable expenses discussed with the project team.

128.    On January 29, 2015, Relator sent an e-mail to Hurley, copying Cortés and Burton, seeking information about $124,000 in expenses and copies of the SF-425 and invoice to USAID.

129.    When Relator pushed this issue, Burton responded via e-mail to "talk offline."

130.    Cortés was furious that he, as Chief Financial Officer, ended up signing the Federal Financial Report SF-425 form containing what would be termed as fraudulent charges to the government.

131.    On the USAID (Mobile Hub) grant, among the items that Relator found in violation were consultant payments for daily rates as high as $1,800 and $1,700 per day, far in

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

excess of the market rate for business development consultants. There was no cost analysis or price justification for how these rates were determined given that the scope of work was succinct, involved proposal development work and was not specific to project implementation tasks.

132.    Defendant also paid for first class airline tickets, also not permissible under the regulations. The justification offered was not logical, that "it was cheaper than business class tickets".

133.    During January and February 2015, there was a lot of e-mail traffic about the USAID grant related expense requirements and how to address these problems.

134.    Burton told Relator that she was embarrassing "them," meaning McDermott and the USAID (Mobile Hub) grant team because she was asking them questions regarding these financial transactions which in any case had already been expensed and paid.

135.    The question of conflict of interest also arose because the consultants engaged on the USAID (Mobile Hub) grant were involved in procurement of services on behalf of the Defendant.  There was no signed statement of conflict of interest on record, yet these same consultants engaged on the Mobile Hub grant were charged with developing new scopes of work and selecting new consultants for the same project they were working on.

136.    Burton did not want discussions about procurement contracts on e-mail because he "didn't want questions asked about consultant conflicts of interest."

137.    Relator drafted and sent to the USAID (Mobile Hub) project team a conflict of interest statement to be used by the consultants not covered by the employee handbook, but it was not signed by the consultants as of the time of Relator's termination.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

19

138.    Realtor also gave Burton a copy of the USAID document on "fraud indictors," with numerous sections highlighted where Defendant's activities could be implicated because of numerous oversights in adhering to the required regulations.

139.    On February 4, 2015, Relator had lunch with Burton, Executive Director of BSBR and Sonti, Counsel and Senior Director of Contracts in BSBR, to discuss, among other topics, how best they could ensure that USG funded project teams were not circumventing Defendant's procurement procedures.

140.    McDermott's USAID Mobile-Hub team had continued to bypass Relator and Compliance before going to the Contracts department, even though McDermott and his team knew that they needed to go to the Relator, the Compliance Officer, before the Contracts department.

141.    On February 4, 2015, Relator also had a meeting with McDermott and his Grants Manager, who agreed not to authorize any further expenses without checking with Relator first.

142.    Things did not improve, however.

143.    A procurement contract for consultant services with Dalberg for $2,600,000 was forwarded on an email by Sonti to Relator. The vendor had already signed the contract.  Sonti questioned the process used to procure the contract because, among other issues, it had not gone through Relator.  In addition to circumventing both Defendant and USAID's procurement procedures, the contract, although already signed, had not been reviewed by Sonti or the contracts department.

144.    Furthermore, there were very apparent conflicts of interest in the selection of the Dalberg contract because it was selected by a consultant, Beth Gertz.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

20

145.   Gertz is principle and owner of Seven Hills Consulting, which is engaged on the USAID Mobile Hub project.  Gertz also worked as a consultant with Dalberg on a different project prior to the start of the Mobile Hub USAID project.

146.   Gertz did not sign a conflict of interest statement at the time of selecting new consultants on the USAID Mobile Hub project and continued to select other consultants, including the PWC consultancy, even at the time of the Relator's termination.

147.    Even though the Dalberg contract did not have a defined scope inserted in the scope of work section, service prices were already pre-determined and included in the contract. No cost justification or price determination accompanied the contract.

148.   There was another procurement contract for consultant services with PWC under the USAID funded Mobile Hub project.  This contract was for $660,000 and also had very apparent conflicts of interest.  PWC was engaged to provide strategic services to the USAID Mobile Hub project, and yet PWC was the same company that would carry out the single audit (OMB A-133 Audit) each May to ensure project compliance with USG government regulations.

149.   For both the Dalberg and PWC contracts, there was no evidence of bids or selection criteria, or other necessary steps for government-funded procurement activities.

***Relator is Terminated.***

150.   On February 18, 2015, thirty minutes before Relator's scheduled annual review, Relator was fired.

151.   Burton told Relator that the agency was "going in a different direction" and "no longer required her services."  Burton then he left the room.

152.   The HR representative, Kawanna Jenkins assured Relator that her performance was not in question, adding "It's not you."

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

153.   Since her termination, Relator's original job has been posted.

154.   The Realtor, although discharged was found to be eligible for DC unemployment benefits because the DC Office of unemployment found no evidence of gross misconduct during their investigation. UNF was unable to provide any evidence to this end.

***May 2015 Audit.***

155.   The annual audit conducted by PWC should be complete at the end of May 2015.

156.   Relator heard that PWC is auditing Defendant more closely this year, and that the audit results thus far do not reflect well on Defendant.

157.   To Relator's knowledge, Defendant has not filled the position of Compliance Officer since Relator's termination.

**COUNT I**
**Violation of Federal False Claims Act**
**31 U.S.C. § 3729(a)(1)(A)**

158.   Relator reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

159.   Defendant knowingly presented or caused to be presented to the government and its officers, false or fraudulent claims in order to obtain payment or approval from the government, in violation of § 3729(a)(1)(A).

160.   Defendant knowingly presented or caused to be presented claims to obtain payment for expenses and procurements not in compliance with the use of USG funds.

161.   The expenses are not compliant with use of USG funds because (1) they do not follow Defendant's own procurement procedures as required; (2) they are charged outside of the contract period; and (3) they are not related to the contract.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

162.    The procurements are not compliant with use of USG funds because (1) there is no cost analysis or price justification for the procurements; (2) there are conflicts of interest; (3) there was no bidding process; and (4) there was no documented selection criteria.

163.    Yet when Defendant draws down on funds from USAID to cover these expenses and procurements, it certifies that the expenses and procurements are compliant with the use of USG funds.

164.    The result of Defendant's actions has led the federal government to pay for expenses and procurements not authorized by USG funding.

165.    As a result of this conduct, the United States of America has been damaged by all of the aforementioned misrepresentations and failures to comply with the requisite contract, laws and regulations in the amount of $20,000,000.

**COUNT II**
**Violation of Federal False Claims Act**
**31 U.S.C. § 3729(a)(1)(B)**

166.    Relator reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

167.    Defendant knowingly presented or caused to be presented to the government and its officers, false records or statements material to false or fraudulent claims and knowingly failed to disclose material facts, in order to obtain payment or approval from the government, in violation of § 3729(a)(1)(B).

168.    Defendant's fraud violated a material condition of the payment for claims when it failed to comply with the government contract which required proper use of USG funds.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

23

169.   Defendant made false statements to the government by failing to comply with these terms of the contract, and drawing down on USG funds for expenses and procurements in violation of the terms of the contract.

170.   Defendant knowingly presented these false claims, as Relator repeatedly reported to the Defendant that the Defendant charges expenses that were outside of the contract period and not related to the contract, and procurements that were had apparent conflicts of interest, had no bidding process and had no selection criteria.

171.   When Relator attempted to correct Defendant's problems with not complying with the proper expense and procurement procedures, Relator was rebuffed by management and eventually terminated.

172.   The result of Defendant's actions has led the federal government to pay for expenses and procurements that do not comply with the contract for use of USG funds.

173.   As a result of this conduct, the United States of America has been damaged by all of the aforementioned misrepresentations and failures to comply with the requisite contract, laws and regulations in the amount of $20,000,000.

**COUNT III**
**Violation of the Federal False Claims Act**
**31 U.S.C. § 3730(h)**

174.   Relator reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

175.   Defendant terminated Relator because he voluntarily performed lawful acts to investigate one or more violations of the False Claim Act, including questioning Defendant's billing the government for expenses and procurements that violated the use of USG funds.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

176.   At all relevant times, Relator was engaging in activity protected by the False Claims Act.

177.   Defendant, knowing that Relator was engaging in such activity, terminated Relator because of his protected conduct.

## COUNT IV
### Whistleblower Retaliation
### NDAA Section 828, 41 U.S.C. § 4712

178.   Relator hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

179.   Section 838 of the NDAA protects employees of contractors, subcontractors, and grantees who disclose to a covered person or body "information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including competition for or negotiation of a contract) or grant." *See* 41 U.S.C. § 4712(a).

180.   A covered person or body includes "a management official or other employee of the contractor, subcontractor, or grantee who has the responsibility to investigate, discover, or address misconduct." *See* 41 U.S.C. § 4712(a)(2)(G).

181.   Relator engaged in protected conduct under the NDAA when she reported to senior management impermissible expenditures being charge against USG funds, excessive spending of USG funds, conflicts of interest, and false certifications on form SF-425.

182.   A reasonable person could conclude that the conduct which Relator observed and disclosed in good faith constituted violations of spending USG funds.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

183.    Following Relator's disclosures, Defendant retaliated against Relator by terminating Relator's employment.

184.    As a direct and proximate result of the aforesaid unlawful retaliatory employment practices, Relator has sustained and will in the future sustain, permanent and irreparable economic and other harm.

185.    Under 41 U.S.C. § 4712(c)(1), Relator is entitled to recover: reinstatement, compensatory damages (including back pay), employment benefits, other terms or conditions of employment that would apply if the reprisal had not been taken, and attorneys' fees and costs.

## COUNT V
### Common Law Wrongful Termination of Employment
### in Violation of District of Columbia Public Policy

186.    Relator incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

187.    Defendant engaged in a continuous course of conduct to discredit, harass and punish Relator for refusing to engage in illegal acts involving defrauding the United States government.

188.    Relator refused to engage in illegal conduct with Defendant to defraud the United States government, and reported and tried to correct the illegal conduct by Defendant.

189.    Defendant terminated Relator.

190.    Relator was terminated because she refused to engage in illegal conduct, and attempted to report and correct the illegal conduct.

191.    Relator's termination violated the established public policies against termination from employment of employees who resist or oppose illegal activities by their employers or by supervisory officials or agents of their employers.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

192.    These public policies are articulated by the Code of Federal Regulations, *inter alia*, 2 C.F.R. §§ 215 and 230, which establishes the cost principles and administrative requirements for use of United States Government funds..

193.    Relator's termination violated public policy underlying the laws of the United States which proscribe Defendant's conduct, *inter alia*, 2 C.F.R. § 215 (administrative requirements) and 2 C.F.R. § 230 (cost principles).

194.    2 C.F.R. § 215 sets forth the United States' public policy on the administrative requirements for use of United States government funds and is intended to protect a class of persons of which Relator is a member.  Relator's refusal to approve the following is in furtherance of the protections set forth in the statute: SF-424 forms that do not comply with the regulations; expenses billed outside of the funding period; contracts with conflicts of interest; procurements with no bidding process; and procurements with no selection criteria.  Relator's retaliatory termination was against the public policy set forth in this statute.

195.    2 C.F.R. § 230 sets forth the United States' public policy on the cost principles for use of United States government funds and is intended to protect a class of persons of which Relator is a member.  Relator's refusal to approve the following is in furtherance of the protections set forth in the statute: expenses that were illegally shifted to Federal awards; procurements for consulting services that were not related to the nature and scope of the work; and expenses for first class air travel.  Relator's retaliatory termination was against the public policy set forth in this statute.

196.    Relator's termination, and the events leading up to that termination, violated public policy; evidenced malice, spice, and ill will; was willful and wanton; and evinced a conscious disregard for the rights of Relator.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

27

197.    As a direct and proximate result of the actions of Defendant, Relator has suffered and continues to suffer injury, physical and emotional distress, pain, suffering, inconvenience, extreme emotional distress, mental anguish, loss and enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, medical expenses, other past pecuniary losses, future pecuniary losses, and other nonpecuniary losses.

198.    Due to the severity of the retaliatory conduct of Defendant, Relator is also entitled to punitive damages.

## COUNT VI
### Discrimination
### District of Columbia Human Rights Act, D.C. Code § 2-1401, *et seq.*

199.    Relator incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

200.    At all times relevant to this Complaint, Relator was an "employee" as defined in D.C. Code § 2-1401.02(9).

201.    At all times relevant to this Complaint, Defendant was Relator's "employer" as defined in D.C. Code § 2-1401.02(10).

202.    At all times relevant to this Complaint, Defendant controlled the terms and conditions of Relator's employment, including her hiring, supervision, directing her work, and leave approvals.

203.    Relator had a record of good performance and met expectations at all relevant times prior to Defendant's discrimination.

204.    Relator is of African American race, and therefore, is a member of a protected class.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

205.    Defendant unlawfully discriminated against Relator when it failed to select her for a director-level position and when it terminated Relator's employment, at least in part, because of her race.  These adverse actions occurred under circumstances that raise a reasonable inference of unlawful discrimination based on Relator's race.

206.    Defendant had no legitimate business reason for the adverse actions it has taken against Relator.  Defendant's stated reasons for the adverse actions are pretextual.

207.    Relator has sustained damages as the result of Defendant's illegal discrimination in violation of the DCHRA, including, but not limited to, damage to her career, and emotional, mental, and physical distress and anxiety.

208.    Relator is entitled to such legal or equitable relief as will effectuate the purposes of the statute, including but not limited to economic and compensatory damages, injunction, and reasonable costs and attorneys' fees.

### COUNT VII
**Retaliation**
**District of Columbia Human Rights Act, D.C. Code § 2-1401, *et seq.***

209.    Relator incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

210.    At all times relevant to this Complaint, Relator was an "employee" as defined in D.C. Code § 2-1401.02(9).

211.    At all times relevant to this Complaint, Defendant was Relator's "employer" as defined in D.C. Code § 2-1401.02(10).

212.    At all times relevant to this Complaint, Defendant controlled the terms and conditions of Relator's employment, including her hiring, supervision, directing her work, and leave approvals.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

213.    Relator engaged in protected activity under the DCHRA when she made an internal complaint of discrimination based on her race, national origin, sex and age on January 16, 2015.

214.    Defendant unlawfully discriminated against Relator when it failed to select her for a director-level position and when it terminated Relator's employment following her protected conduct.

215.    Defendant had no legitimate business reason for the adverse actions it has taken against Relator.  Defendant's stated reasons for the adverse actions are pretextual.

216.    Relator has sustained damages as the result of Defendant's illegal discrimination in violation of the DCHRA, including, but not limited to, damage to her career, and emotional, mental, and physical distress and anxiety.

217.    Relator is entitled to such legal or equitable relief as will effectuate the purposes of the statute, including but not limited to economic and compensatory damages, injunction, and reasonable costs and attorneys' fees.

## COUNT VIII
### Discrimination Based on National Origin/Race
### Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, *et seq.*

218.    Relator hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

219.    Relator is an "employee" as the term is defined at 42 U.S.C. § 2000e(f).

220.    Defendant UNF is an "employer" as the term is defined at 42 U.S.C. § 2000e(b).

221.    Defendant violated 42 U.S.C. § 2000e-2 by discriminating against Relator, based on her national origin and race, when it did not select Relator for a director level position.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

222.    Defendant's stated reasons for not selecting Relator for a director level position were pretext for its unlawful race and national origin discrimination.

223.    Relator has exhausted her administrative remedies.

224.    Relator sustained substantial monetary and non-monetary damages as the result of Defendant's illegal conduct.

**COUNT IX**
**Discrimination Based on Gender**
**Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, et seq.**

225.    Relator hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

226.    Relator is an "employee" as the term is defined at 42 U.S.C. § 2000e(f).

227.    Defendant UNF is an "employer" as the term is defined at 42 U.S.C. § 2000e(b).

228.    Defendant violated 42 U.S.C. § 2000e-2 by discriminating against Relator, based on her sex, when it did not select Relator for a director level position.

229.    Defendant's stated reasons for not selecting Relator for a director level position were pretext for its unlawful gender discrimination.

230.    Relator has exhausted her administrative remedies.

231.    Relator sustained substantial monetary and non-monetary damages as the result of Defendant's illegal conduct.

**COUNT X**
**Retaliation**
**Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, et seq.**

232.    Relator hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

233.    Relator is an "employee" as the term is defined at 42 U.S.C. § 2000e(f).

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

31

234.    Defendant UNF is an "employer" as the term is defined at 42 U.S.C. § 2000e(b).

235.    Relator engaged in protected activity under Title VII on January 16, 2015, when Relator made an internal complaint of discrimination based on her race, national origin, age and sex.

236.    Defendant violated 42 U.S.C. § 2000e-2 by firing Relator because she engaged in protected activity under Title VII when she opposed discriminatory behavior by Defendant.

237.    Defendant's stated reasons for terminating Relator were pretext for its unlawful retaliation.

238.    Relator has exhausted her administrative remedies.

239.    Relator sustained substantial monetary and non-monetary damages as the result of Defendant's illegal conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, the Relator Corinne Omwenga acting on behalf of and in the name of the United States of America, and on her own behalf, prays that judgment be entered against Defendant UNF as follows:

a.    In favor of the United States against Defendant for treble damages to the federal government and maximum civil penalties for each violation of the federal False Claims Act;

b.    In favor of the Relator for the maximum amount pursuant to 31 U.S.C. §§ 3730(d) & 3730(h), as well as reasonable expenses, attorney fees, and costs incurred by the Relator and his counsel;

c.    For all costs of the False Claims Act civil action;

d.    Relator's reinstatement or, in lieu therefore, full front pay and benefits for Relator;

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

e.      Economic damages for lost compensation and damages to Relator's career,

reputation, and earning capacity in an amount to be determined at trial but in excess of $10,000;

f.      Compensatory damages, including but not limited to pain and suffering,

emotional distress and reputational damage;

g.      Punitive damages;

h.      Reasonable costs and experts' and attorneys' fees; and

i.      Any other such relief that the Court may deem just and equitable.


## DEMAND FOR JURY TRIAL

Omwenga demands a trial by jury for any and all issues proper to be so tried.


Dated this 28th day of May, 2015.


Respectfully Submitted,

David Scher, DC Bar No. 474996
R. Scott Oswald, DC Bar No. 458859
The Employment Law Group, P.C.
888 17th Street, NW, 9th Floor
Washington, D.C. 20006
(202) 261-2803
(202) 261-2835 (facsimile)
dscher@employmentlawgroup.com
soswald@employmentlawgroup.com
*Counsel for the Plaintiff*


*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via certified mail, on this 28th day of May 2015, upon:

Loretta Lynch, Esq.
Attorney General of the United States
Office of the Attorney General, Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530-0001

Ronald C. Machen, Jr.
United States Attorney
District of Columbia
U.S. Attorney's Office
555 4th Street, NW
Washington, DC 20530

David L. Scher

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States ex. rel. Corrine Omwenga v. United Nations Foundation*