IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LINDA MIDDLETON,<br><br>    Plaintiff,<br><br>  vs.<br><br>DOUGLAS COUNTY, NEBRASKA;<br><br>    Defendant. | **8:12CV19**<br><br>**MEMORANDUM AND ORDER** |

  This matter is before the court on defendant's partial Motion to Dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6), Nebraska law, and 28 U.S.C. § 1367(c). Filing No. 8. Plaintiff Linda Middleton ("Middleton") filed a worker's discrimination complaint on January 12, 2012. Filing No. 1. She brought four actions in her original complaint: a violation of Title VII, a violation of the American Disabilities Act ("ADA"), a violation of the Family Medical Leave Act ("FMLA"), and a violation under Nebraska state law for unlawful termination based on a perceived workers' compensation claim. Filing No. 1. Defendant Douglas County ("Douglas County") filed a motion to dismiss for failure to state a claim on May 2, 2012. Filing No. 8. Douglas County challenged only two of the four actions in this motion: the Title VII claim and the state law claim. Filing No. 8. In a response to the motion, Middleton conceded that the Title VII claim was not properly before this court.[1] Filing No. 13. This court now conducts an initial review of the complaint to determine whether Middleton stated a claim under

---

[1] Douglas County challenged, and Middleton conceded, that Middleton did not exhaust all administrative remedies on the Title VII claim because she did not bring forth the Title VII claim to the E.E.O.C. Filing Nos. 8, 13. Accordingly, the court will dismiss this claim.

Nebraska law pursuant to Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## Summary of Complaint

Middleton alleges many facts in her complaint regarding the four different claims. This court will concentrate on the facts related to the state law claim, and the court will assume Middleton's version of the facts is true for purposes of this motion to dismiss. Middleton began working for Douglas County in 2001 as a scanner in the Clerk of the District Court's Office. Filing No. 1 at 1. In the summer of 2009, Middleton's doctor determined that Middleton needed to have trigger thumb surgery. *Id.* at 2. Middleton's doctor set the surgery date for December 16 or 17, 2009. *Id.* at 4.

On November 23, 2009, Middleton provided a note to Douglas County indicating that Middleton was having difficulties performing her job due to her injury. *Id.* at 3. Douglas County did not respond to Middleton's note at that time. *Id.* On December 3, 2009, Middleton went to her doctor because she was unable to perform her job without reasonable accommodation. *Id.* Middleton's doctor told Middleton that they needed to reschedule the surgery for an earlier date. *Id.* at 4. Middleton's doctor set the surgery for December 9, 2009. *Id.* Middleton's doctor prepared a note for Middleton's employer, explaining that Middleton could not perform her job as well and that the surgery date had changed. *Id.* Middleton provided this note to District Court Clerk John Friend ("Friend") in a meeting. *Id.* Friend asked if Middleton could perform her job with the use of only one hand. *Id.* Middleton explained that she did not know, but that she was willing to try. *Id.* Friend told Middleton that he no longer had a job for her, and placed her on sick leave. *Id.*

2

On December 4, 2009, Friend showed up unexpectedly at Middleton's home and asked whether Middleton was making a workers' compensation claim for her injury. *Id.* at 5. Middleton characterized Friend's tone as angry and demanding, and alleges that she was in fear of her personal safety. *Id.* Middleton responded that she was not making a workers' compensation claim, and that she was not aware that her injury was related to her employment. *Id.* Friend asked that Middleton submit to an examination by a doctor of Douglas County's choosing. *Id.* Middleton complied and alleges that she complied out of fear for her job. *Id.* Middleton saw Douglas County's selected doctor, Dr. Klau, on December 7, 2009. *Id.* Middleton alleges that Dr. Klau only examined her for seven minutes, but he agreed with Middleton's other doctors that Middleton needed immediate surgery. *Id.* Middleton alleges that Douglas County also conducted illegal surveillance of Middleton during this time period, in response to the perceived workers' compensation claim. *Id.*

On December 8, 2009, Friend contacted Middleton and stated that Dr. Klau had indicated the surgery was unneeded. *Id.* Middleton alleges that these statements were certainly false, as Friend did not receive any documentation from Dr. Klau until December 14, 2009. *Id.* Due to a blizzard, Middleton's surgery was rescheduled from December 9 to December 11, 2009. *Id.* at 6. Middleton did not show up for work on December 9, 2009. *Id.* Friend determined that Middleton had abandoned her job, though Middleton alleges that other employees who failed to show up were not likewise deemed to have abandoned their jobs. *Id.* Middleton alleges that in the same time frame, a co-worker also received surgery. *Id.* Middleton alleges that this co-worker was not similarly burdened by surveillance or a request for a doctor's note because the co-

3

worker was not perceived by the employer to be making a workers' compensation claim. *Id.* Middleton met with Friend in January 2010 to ask for her job back, but was refused. *Id.* At no time did Middleton file a workers' compensation claim.

## STANDARD OF REVIEW

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 n.3 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (quoting *Twombly,* 550 U.S. at 555). In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'" *Id.* at 556. (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). "On the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555-56. In other words, the complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual

4

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard does not require a probability, but asks for more than a sheer possibility that a defendant has acted unlawfully).

*Twombly* is based on the principles that (1) the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions and (2) only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 678-79. Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Id.* Accordingly, under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id.* Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and determine whether the allegations plausibly give rise to an entitlement to relief. *Id.*

Thus, the court must find "enough factual matter (taken as true) to suggest" that "discovery will reveal evidence" of the elements of the claim. *Twombly,* 550 U.S. at 556. When the allegations in a complaint, however true, could not raise a claim of entitlement to relief, the complaint should be dismissed for failure to set a claim under Rule 12(b)(6). *Id.* at 558; *Iqbal,* 556 U.S. at 679 (stating that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'").

5

**Option 1: Discussion of Claim**

Middleton alleges that Douglas County terminated her employment because Douglas County inaccurately believed that Middleton was considering filing a workers' compensation claim. This court finds that Middleton has alleged a claim of unlawful retaliation under Nebraska law.

The prima facie case for unlawful retaliation under Nebraska law has three elements: first, "an employee must show that he or she participated in a protected activity"; second, "the employer took an adverse employment action against him or her"; and third, "that a causal connection existed between the protected activity and the adverse employment action." *Riesen v. Irwin Indus. Tool Co.*, 717 N.W.2d 907, 915 (Neb. 2006). In the workers' compensation claim context, the protected activity in the first element is for the employee to exercise rights under the Nebraska Workers' Compensation Act ("Act"). Middleton argues that she suffered unlawful retaliation for the employer's perception that she would file a workers' compensation claim. To survive this motion to dismiss, Middleton needs only to allege enough facts to show each element of the claim is plausible.

Under the *Iqbal* standard, Middleton has alleged enough facts for this court to find that the second and third elements of unlawful retaliation were met. For the second element, Middleton was fired, an adverse employment action against her by her employer. For the third element, it is plausible under this set of facts that Middleton's firing was caused by her employer's belief that she would file a workers' compensation claim. The crux of the issue for this court is whether Middleton has alleged facts to support the first element that she engaged in a protected activity.

6

The Nebraska Supreme Court has not issued an opinion directly on point to the question of whether an employee is engaged in a protected activity when she has not filed a workers' compensation claim, but her employer believes that she intends to do so. When a state court has not addressed the precise issue at a hand, a federal court "may consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue." *City of Jefferson City, Mo. v. Cingular Wireless, LLC*, 531 F.3d 595, 599 (8th Cir. 2008).

Nebraska is an employment at-will state. There is a clear right of an employer to terminate employees at will that is only restricted "by exceptions created by statute or those instances where a very clear mandate of public policy has been violated." *Jackson v. Morris Communications Corporation*, 657 N.W.2d 634, 637 (Neb. 2003). The Nebraska Supreme Court has issued two opinions directly considering unlawful retaliation related to workers' compensation claims that provide guidance to this court: *Jackson v. Morris Communications Corporation*, 265 N.W.2d 634 (Neb. 2003) and *Trosper v. Bag 'N Save*, 734 N.W.2d 704 (Neb. 2007). In both *Jackson* and *Trosper*, the Nebraska Supreme Court recognized that the Nebraska Workers' Compensation Act ("Act") presented a clear mandate of public policy warranting application of the public policy exception.

In *Jackson*, the Nebraska Supreme Court recognized an action for unlawful retaliation when an employee was discharged for filing a workers' compensation claim. 657 N.W.2d at 641. The court reasoned that the Act had a purpose to protect the public, and that this rationale would be undermined if there was a fear of retaliation for filing a

7

claim. *Id.* at 640-41. In *Trosper*, the court recognized an action for unlawful retaliation when an employee was demoted for filing a workers' compensation claim. 734 N.W.2d at 706. The court expanded its *Jackson* holding in *Trosper*, reasoning that there was a broad intent in *Jackson* to protect the beneficial purpose and important public policy of the Act. *Trosper, 734 N.W.2d at 712*.

Under the language of these two cases, it is likely that the Nebraska Supreme Court would recognize Middleton's claim as being a protected activity. In considering retaliation claims under the Act, the Nebraska Supreme Court has considered whether the broad purpose of the Act is met and whether employers are taking advantage of a loophole to the disadvantage of employees. Recognition of this claim is consistent with those concerns.

First, recognizing this claim is consistent with the Nebraska Supreme Court's recognition of the broad purpose of the Act. The Nebraska Supreme Court has provided guidance to the courts, stating that "courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme" when determining whether a clear mandate of public policy was violated. *Trosper, 734 N.W.2d at 707*. The Nebraska Supreme Court has already recognized that the Act itself is a clear mandate of public policy. The question for this court is whether the public policy exception is met when an employee has not filed a claim under the Act.

The Nebraska Supreme Court has recognized the underlying rationale in this context is that "a rule that allows fear of retaliation for the filing of a claim undermines [the important public policy]" of the Act. *Trosper, 734 N.W.2d at 711* (quoting *Jackson,*

657 N.W.2d at 639). This rationale does not appear to limit actionable claims to situations where a claim is actually filed, but may include an activity that would undermine an employee's access to the Act by creating fear of retaliation. As the Nebraska Supreme Court recognizes in *Trosper*, the duty of an employer to compensate injured workers is severely frustrated if employers can prevent employees from filing claims by threat of discharge. *Trosper,* 734 N.W.2d at 707-08. It is not a stretch of the imagination to see that the duty of the employer is severely frustrated when the employer takes actions intended to *actually prevent* the employee from filing that claim. Middleton alleges facts that create a plausible claim that her employer intended to harass her into not filing a workers' compensation claim. The fact that her employer was incorrect about her intentions does not minimize the employer's intent to frustrate the purpose of the Act or Middleton's right to consider filing a workers' compensation claim. Recognition of this claim is consistent with Nebraska's established public policy concerns.

Second, recognizing this claim is consistent with the Nebraska Supreme Court's desire to discourage employers from looking for loopholes to the public policy exception of the Act. The court in *Trosper* recognized that in the absence of an available claim of unlawful demotion, employers could avoid being subject to an unlawful retaliation claim under the Act by simply demoting employees rather than firing them. 734 N.W.2d at 711. The court closed this loophole by recognizing a cause of action for demotion of employees. *Id.* It is likely that the Nebraska Supreme Court would recognize this current claim as an employer seeking another loophole. If this claim is not recognized, an employer can intimidate an employee into failing to file a workers' compensation claim.

9

The employer then successfully avoids an unlawful retaliation claim for the technical reason that the employer successfully harassed the employee into not pursuing her basic employment rights. Recognizing this claim is consistent with the Nebraska Supreme Court's intent to prevent loopholes for employers.

Douglas County argues that the Nebraska Supreme Court intended to limit unlawful retaliation claims to the two specific situations enunciated in *Trosper* and *Jackson*. Filing No. 16 at 4. Douglas County further argues that the Nebraska Supreme Court could not have intended protection for situations where an individual did not file a workers' compensation claim. *Id.* at 5. However, the Nebraska Supreme Court is quite clear that even though it limited its determination of retaliatory claims to a case-by-case basis for the future, it was not closing the door to future claims, particularly if those claims met the underlying public policy interests of the Act. See *Trosper*, 734 N.W.2d at 712.

The protected activity in this case is Middleton's right to consider filing a workers' compensation claim free from employer harassment. Middleton alleges that her employer came to her home, intimidated and harassed her regarding a workers' compensation claim, forced her to go to an employer-approved doctor, and then used the employer-approved doctor's name to harass Middleton about her upcoming surgery. Middleton further alleges that her employer placed her under surveillance, and that the combination of all of these actions caused Middleton great distress and to fear for her safety. Middleton believed that all of her employer's actions were in response to her employer's perception that she would be filing a workers' compensation claim. Taking these facts as true, as this court must at this stage of the proceedings, it is plausible that

10

Middleton has alleged a protected activity under Nebraska state law. She has further alleged enough facts to meet the remaining two elements of an unlawful retaliation claim. Douglas County has the opportunity during discovery to elicit further facts to challenge any of these elements, and may make a motion for summary judgment, if appropriate, at that time.

IT IS, THEREFORE, ORDERED that Douglas County's motion to dismiss for failure to state a claim, Filing No. 8, is denied as to the state law claim and granted with prejudice as to the Title VII claim.

Dated this 1st day of October, 2012.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge