UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CORINNE OMWENGA, <br><br> Plaintiff, <br><br> v. <br><br> UNITED NATIONS FOUNDATION, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 15-cv-0786 (TSC) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

Plaintiff Corinne Omwenga brings this case against the United Nations Foundation ("UNF"), alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the D.C. Human Rights Act, D.C. Code § 2.1401.01 *et seq.* ("DCHRA").  Specifically, she alleges that UNF discriminated against her when it declined to hire her for a director position and later terminated her employment, and further that UNF retaliated against her when she reported concerns about potential violations of federal law relating to grant funding.  UNF has filed a motion to dismiss.  (ECF No. 21).  For the reasons set forth below, Defendant's motion is DENIED.

I.   BACKGROUND

Plaintiff Corinne Omwenga was an employee of UNF between July 2014 and February 2015.  (Second Am. Compl. ("Compl.") ¶¶ 49, 25).  She is a Black woman who was born in Kenya and later immigrated to the United States, and she holds two master's degrees in science and business administration.  (Compl. ¶¶ 21–22).  Plaintiff states that she has "spent many years working with nonprofit organizations and working with grants from USAID and other government entities."  (*Id.* ¶ 22).  In June 2014, she applied for a Director of Budgets position with the

1

Business Services, Business and Reporting ("BSBR") department of UNF, and though she was not selected, she was invited to interview for a Compliance Officer position in the same department. (*Id.* ¶¶ 45–47). UNF offered her the position, and she accepted and began working in July 2014. (*Id.* ¶¶ 48–49). UNF filled the Director position with Andrew McDermott, a white male who Plaintiff alleges holds a bachelor's degree and has "never worked for a non-profit and had no experience handling government funds prior to his employment with Defendant." (*Id.* ¶¶ 50–52).

In her position as Compliance Officer, Plaintiff developed policies and procedures for how UNF employees should manage the federal grants it receives. (*Id.* ¶ 59). Plaintiff also reviewed all procurements that were funded by these grants before they were approved by the Contracts department, in order to perform due diligence and ensure compliance with internal policies as well as federal laws and regulations. (*Id.* ¶ 62). In the course of this work, Plaintiff found numerous allegedly unlawful expenditures and conflicts of interest, and she reported these in a December 2014 e-mail to Camila Campo, whose position is not clear, Walter Cortés, the Chief Financial Officer of UNF, and David Burton, the Executive Director of BSBR. (*Id.* ¶ 76; Def. Ex. 2). She reported additional issues the following month and alleges that she received "pushback." (Compl. ¶ 113). Additionally, on February 4, 2015, Plaintiff met with Burton and Lara Sonti, Counsel to UNF and Senior Director of the Contracts department, to discuss her concerns about these expenditures and conflicts of interest. (*Id.* ¶ 129).

During this time, Plaintiff also came to believe she was performing work at a Director-level and deserved a higher salary. (*See id.* ¶¶ 88–96). On December 11, 2014, Plaintiff e-mailed Maxine Somerville, the Executive Director of the Human Resources department, and, after laying out examples of how the work she was performing was above and beyond that envisioned by the job description, requested that Somerville consider changing Plaintiff's title. (*Id.* ¶ 92; Def. Ex.

1).  In this e-mail, Plaintiff also stated that "[i]t feels like I face disparate treatment in my department" because all others who report directly to Burton, the Executive Director of BSBR, have the title "Director."  (Compl. ¶¶ 92–93; Def. Ex. 1).

On February 18, 2015, Plaintiff was notified that she had been terminated from her position.  (Compl. ¶ 140).  She alleges that Burton told her that UNF was simply "going in a different direction" and that a Human Resources representative, Kawanna Jenkins, told her that the termination was not performance-related.  (*Id.* ¶¶ 140–42).  The following week, Plaintiff filed a complaint of discrimination and retaliation with the U.S. Equal Employment Opportunity Commission, and she was issued a Notice of Right to Sue letter on March 3, 2015.  (*Id.* ¶¶ 17–18).

Plaintiff first filed her Complaint under seal in May 2015, alleging substantive violations of the False Claims Act.  (ECF No. 1).  The United States elected not to intervene in March 2016, and the court subsequently ordered the case unsealed.  (ECF Nos. 4, 5).  Plaintiff filed her First Amended Complaint in May 2016, and Defendant moved to dismiss the following month.  (ECF Nos. 6, 15).  The parties then consented to the dismissal of some of Plaintiff's claims as well as the filing of a Second Amended Complaint, which was filed in July 2016.  (ECF Nos. 17, 18, 19, 20).  Defendant has again moved to dismiss.  (ECF No. 21).

## II.     MOTION TO DISMISS STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when the factual content allows the court to "draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.*  Thus, although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56. Evaluating a 12(b)(6) motion is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

### A. False Claims Act Retaliation Claim (Count I)

In Count I of her Complaint, Plaintiff first alleges that UNF violated the anti-retaliation provision of the FCA, 31 U.S.C. § 3730(h), when it terminated her after she investigated and reported conduct that she believed violated the False Claims Act.  (Compl. ¶¶ 147–56).  In order to state a retaliation claim under the FCA, Plaintiff must show "(1) that [she] engaged in protected activity ('acts done . . . in furtherance of an action under [the FCA]'); and (2) that [she] experienced discrimination 'because of' [her] protected activity."  *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 422 (D.C. Cir. 2005) (quoting 31 U.S.C. § 3730(h)).  Further, "[t]o establish the second element, the employee must demonstrate [both] that the employer had knowledge of the employee's protected activity and that the retaliation was motivated by the protected activity."  *Id.* (citing *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 736 (D.C. Cir. 1998)).

Where, as here, a plaintiff's normal job responsibilities include investigating and reporting legal compliance issues, the plaintiff "must overcome the presumption that they are merely acting in accordance with their employment obligations to put their employers on notice." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1261 (D.C. Cir. 2004) (internal quotation omitted).  While "[t]hreatening to file a qui tam suit or to make a report to the government . . . clearly is one way to make an employer aware[,] . . . it is not the only way,"

*Yesudian*, 153 F.3d at 744, as "when an employee acts outside [her] normal job responsibilities or alerts a party outside the usual chain of command, such action may suffice to notify the employer that the employee is engaging in protected activity," *Martin-Baker Aircraft*, 389 F.3d at 1261.

Plaintiff alleges that "[a]s part of her job [as Compliance Officer], [she] developed policies and procedures for Defendant on how to manage and administer USG funds." (Compl. ¶ 59). Plaintiff's work also involved "ensur[ing] that all procurement requirements as outlined in [UNF's] procurement policies and procedures were met before the vendor contract was drawn up." (*Id.* ¶ 62). In December 2014, Plaintiff claims that she became concerned "that Defendant was attempting to charge unallowable expenses against [a] government grant," and she "sent an e-mail to Camila Campo, copying Cortés and Burton, in which Plaintiff pointed out unallowable transactions." (*Id.* ¶¶ 75, 76). The following month, January 2015, Plaintiff "found over $100,000 in procurements and transactions that were illegally charged to" the government grant. (*Id.* ¶ 105). Plaintiff reported these problems and "received pushback," and then later that month Plaintiff again "pushed the issue," and was told by Burton to "talk offline." (*Id.* ¶¶ 113, 118). Plaintiff also alleges that she "found problems related to conflicts of interest," and she met with Burton, Executive Director of BSBR, and Sonti, Counsel and Senior Director of Contracts in BSBR, to discuss her concerns in early February. (*Id.* ¶ 124, 129). She later met with Cortés to discuss her concerns, and he allegedly urged her to "let it go." (*Id.* ¶ 139). To establish the elements of a retaliation claim, Plaintiff alleges she engaged in protected activity throughout December through February, that Defendant retaliated against her by terminating her employment, and the temporal proximity of the two events implies causation. (*Id.* ¶¶ 151–55).

Defendant argues that Plaintiff's claim must be dismissed because she has not alleged sufficient facts to establish that she acted outside of her normal job responsibilities. Other courts

5

within this district have granted motions to dismiss on similar grounds. *See, e.g.*, *Frett v. Howard Univ.*, 24 F. Supp. 3d 76, 87 (D.D.C. 2014) ("[B]ecause it was plaintiff's job to address deficiencies and risks in Howard's HR department, there is no way that the University could have known that plaintiff's report to the auditor constituted a step towards an FCA claim, rather than simply a report detailing inefficiencies that she had discovered in the performance of her job."); *United States ex rel. Ivanov v. Exelis, Inc.*, 41 F. Supp. 3d 50, 54 (D.D.C. 2014) ("[W]ithout any facts showing that [plaintiff] engaged in activity outside of his normal job responsibilities, [the employer] could not have been on notice that he was engaged in protected activity, let alone motivated by it."). However, the court finds that in this case, Plaintiff has alleged sufficient facts to state a plausible FCA retaliation claim. While her ordinary work responsibilities included the investigation and reporting of compliance issues, she alleges that she specifically met with Sonti, "UNF's corporate attorney," to discuss her concerns about possible improper or illegal activity. (Compl. ¶ 151). The court finds that this is sufficient at this stage to support a claim that she took action outside of her normal reporting channels to alert Defendant about possible unlawful activity and that Defendant had some notice that this was not part of her ordinary job performance.

The court therefore DENIES Defendant's motion to dismiss Count I.

### B. Wrongful Discharge Claim (Count II)

Plaintiff next alleges that Defendant wrongfully terminated her. (*Id.* ¶¶ 157–66). "Under D.C. law, 'there is a public policy exception to [the] general rule' that employers may terminate at-will employees at any time for any reason." *Alibalogun v. First Coast Sec. Solutions, Inc.*, 67 F. Supp. 3d 211, 217 (D.D.C. 2014) (quoting *Myers v. Alutiiq Int'l Solutions, LLC*, 811 F. Supp. 2d 261, 266 (D.D.C. 2011)). The exception is very narrow and applies "where the employee acted in furtherance of a public policy 'solidly based on a statute or regulation that reflects the particular

public policy to be applied, or (if appropriate) on a constitutional provision concretely applicable to the defendant's conduct.'" *Myers*, 811 F. Supp. 2d at 266 (quoting *Carl v. Children's Hosp.*, 702 A.2d 159, 163 (D.C. 1997) (Terry, J., concurring)). In order to state a claim for wrongful termination under this exception, Plaintiff must show that the cited public policy is "clearly reflect[ed]" and "firmly anchored either in the Constitution or in a statute or regulation[,]" *Fingerhut v. Children's Nat'l Med. Ctr.*, 738 A.2d 799, 803 n.7 (D.C. 1999), and further that there is "a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination," *Robinson v. Securitas Servs.*, 819 F. Supp. 2d 18, 20 (D.D.C. 2011).

Here, Plaintiff alleges that three federal regulations—2 C.F.R. § 200.112, 2 C.F.R. § 200.318, and 48 C.F.R. § 3.101–1—create a "strong public policy against conflicts of interest." (Compl. ¶ 160). Such a public policy exception has been previously recognized in this district. *See Myers*, 811 F. Supp. 2d at 266–67 (finding that 48 C.F.R. § 3.101–1 and other statutes are "illustrative of the strong public policy against conflicts of interest and favoring the protection of whistleblowers"). To establish that there was a "close fit," Plaintiff further alleges that UNF terminated her "only two weeks after she reported [UNF's] conflicts of interest to [its] corporate counsel." (Compl. ¶ 161). Because Plaintiff need not establish at this stage that UNF actually violated any particular statute or regulation in order to invoke the public policy exception, *see Myers*, 811 F. Supp. 2d at 267, the court finds that Plaintiff has alleged sufficient facts to plausibly state a wrongful discharge claim.

Defendant argues that Plaintiff's claim must still be dismissed because existing statutory remedies bar her claim, as "the rights [a plaintiff] seeks to protect pursuant to this public policy must not be otherwise protected by an existing statute or regulation." *Jones v. D.C. Water & Sewer Auth.*, 943 F. Supp. 2d 90, 96 (D.D.C. 2013). Specifically, Defendant argues that because

Plaintiff's complaint to Sonti "is the same protected activity that Plaintiff relies on for her FCA retaliation claim in Count I . . . [then] Plaintiff has a remedy under the FCA for her claim that she was fired for her alleged disclosure to Sonti." (Def. Mem. at 14). Defendant further argues that the National Defense Authorization Act ("NDAA"), 41 U.S.C. § 4712(a)(1), under which Plaintiff brought a claim in her initial complaint, also offers a remedy for a retaliatory discharge. However, the same set of facts can support more than one theory of recovery. Fed. R. Civ. P. 8(d)(2), (3); *see also Croixland Prop. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 218 (D.C. Cir. 1999). Plaintiff's claim under the FCA, or a potential claim under the NDAA, does not wholly preclude a wrongful discharge claim simply because they are supported by the same reporting of allegedly unlawful conduct. Moreover, while the FCA provides retaliation protection for protected activity, including investigating and reporting misuse of government funds, Plaintiff's asserted public policy exception to the at-will doctrine is grounded in a policy against conflicts of interest. The court finds sufficient distinction to conclude that Plaintiff has plausibly stated a claim for wrongful discharge that is not precluded by other statutory remedial schemes.

Defendant's motion is therefore DENIED as to Count II.

**C.   Race, National Origin, and Gender Discrimination Claims (Counts III, V, VI)**

In Counts III, V, and VI of her Complaint, Plaintiff alleges discrimination based on her race, national origin, and gender under Title VII and the DCHRA. (Compl. ¶¶ 167–76, 188–201). The court analyzes both Title VII and DCHRA claims under the well-established burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006); *see also Roof v. Howard Univ.*, 501 F. Supp. 2d 108, 113 (D.D.C. 2007) ("Because the legal standard for discrimination under the DCHRA is substantively the same as under Title VII, the Court will consider both claims together."). Under this

framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). Plaintiff must demonstrate that she (1) is a member of a protected class and (2) suffered an adverse employment action, and (3) that the action gives rise to an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802. In the discrimination context, an adverse employment action is "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). Furthermore, under the third element of the prima facie showing, an adverse employment action normally gives rise to an inference of discrimination only when "if otherwise unexplained, [it was] more likely than not based on the consideration of impermissible factors." *Burdine*, 450 U.S. at 254.

1. Non-Selection for Director Position

Plaintiff first alleges that UNF discriminated against her when it selected Andrew McDermott, a white male, instead of her for a Director-level position. (Compl. ¶¶ 173, 191, 198). The court finds that at this stage of the litigation Plaintiff has met her burden to allege facts for each of the prima facie elements: she is a Black woman from Kenya, there was a job posting, she had relevant work and educational background such that she was qualified, and UNF hired a white male instead of her. (*Id.* ¶¶ 21–22, 45–53). Because nothing more is required at this stage of the litigation, the court will DENY Defendant's motion to dismiss these claims.

2. Termination

Plaintiff also alleges that UNF discriminated against her in violation of Title VII and DCHRA when she was terminated in 2015. (*Id.* ¶¶ 173, 191, 198). As stated above, to establish a

prima facie case of discriminatory discharge, Plaintiff must allege that she is a member of a protected class and suffered an adverse employment action that gives rise to an inference of discrimination, and further that the discharge was not attributable either to performance below UNF's legitimate expectations or the elimination of the position. *See George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005). Plaintiff has alleged the basic prima facie elements, and has further alleged that she received praise for her work prior to her termination, was told at her termination meeting that the decision was unrelated to her performance, and the UNF posted a job opening for the same position following her termination. (Compl. ¶¶ 69, 142–43). Accepting Plaintiff's allegations as true and resolving all inferences in her favor, as the court is required to do at this stage, the court finds that Plaintiff has alleged sufficient facts to state a plausible claim for discriminatory discharge.

Defendant's motion is therefore DENIED as to Counts III, V, and VI.

### D. Title VII and DCHRA Retaliation Claims (Counts IV, VII)

Finally, Plaintiff alleges that UNF retaliated against her in violation of DCHRA and Title VII following her complaint to the HR Director that she was experiencing "disparate treatment" in her salary and job title. (*Id.* ¶¶ 177–87, 202–12). To prevail on a retaliation claim, "the plaintiff generally must establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008).

Defendant argues that Plaintiff's claim must be dismissed because she has not alleged sufficient facts to show causation. Defendant characterizes Plaintiff's "complaint" as merely an informal e-mail, and states that while she used the term "disparate treatment" in the e-mail, there was no indication it related to her race, national origin, or gender. Courts in this district have

previously held that plaintiffs are required to do more than just mention the words "discrimination" or "disparate treatment" in their complaints about working conditions. *See Haijar-Nejad v. George Washington Univ.*, 37 F. Supp. 3d 90, 145 (D.D.C. 2014); *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 202 (D.D.C. 2012); *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 89 (D.D.C. 2010). However, in the court's view, UNF may plausibly have inferred from Plaintiff's use of the term "disparate treatment" that she was engaged in protected activity. Plaintiff specifically drew a comparison between herself and McDermott, the white male hired instead of her for the Director-level position described above, and further drew distinctions between herself and the remaining individuals who report directly to the Executive Director, who are all white. (*See* Def. Ex. 1; Compl. ¶ 54). At this early stage of the litigation, the court is required to accept all of Plaintiff's allegations as true and resolve all inferences in her favor. Therefore, the court concludes that she has stated a plausible claim for unlawful retaliation under DCHRA and Title VII, and as a result Defendant's motion to dismiss Counts IV and VII is DENIED.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

Date:  March 27, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge