**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CORINNE OMWENGA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-0786 (TSC) |
| | ) | |
| UNITED NATIONS FOUNDATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Corrine Omwenga brought this discrimination and retaliation suit against her former employer, Defendant United Nations Foundation (UNF).  She alleged eight claims: (1) violation of the anti-retaliation provision of the False Claims Act (FCA), (2) common law wrongful termination in violation of District of Columbia public policy, (3) discrimination under the District of Columbia Human Rights Act (DCHRA), (4) retaliation under DCHRA, (5) discrimination based on national origin and race under Title VII of the Civil Rights Act of 1964 (Title VII), (6) discrimination based on sex under Title VII, (7) retaliation under Title VII, and (8) whistleblower retaliation under the National Defense Authorization Act (NDAA).

On September 30, 2019, this court granted summary judgment for UNF on the Title VII and DCHRA claims and denied summary judgment on the FCA, NDAA, and common law wrongful termination claims.  (ECF No. 52, Mem. Op.; ECF No. 53, Order.)  UNF has moved for reconsideration of the court's denial of summary judgment on those claims.  (ECF No. 55.) For the reasons set forth below, the court will GRANT in part and DENY in part UNF's Motion for Reconsideration.

# I.      LEGAL STANDARD

## A.  Motion for Reconsideration

A court may grant a motion to reconsider a non-final order "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  While Rule 54(b) does not specify the standard of review, courts in this Circuit apply the "'as justice requires' standard . . . , which requires 'determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances.'"  *In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 70, 75 (D.D.C. 2008) (citations omitted). Under this standard, interlocutory orders may be reconsidered "when the movant demonstrates (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order."  *Estate of Klieman v. Palestinian Auth.*, 923 F.3d 1115, 1122 (D.C. Cir. 2019) (quoting *In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL 34230081 (D.D.C. Jul. 28, 2000)).  The court's discretion is "subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal quotation marks omitted).  The moving party bears the burden and must show that "some sort of 'injustice' will result if reconsideration is refused."  *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005).

## B.  Summary Judgment

Summary judgment is appropriate when there is no disputed genuine issue of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A dispute of fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute is "material" only when it involves facts "that might affect the outcome of the suit under the governing law."  *Id.*  In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the nonmoving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . ' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323.  In response, the nonmoving party must "go beyond the pleadings" and identify specific facts showing a genuine disputed issue for trial.  *Id.* at 324.  To preclude summary judgment, the nonmovant must "provide evidence that would permit a reasonable jury to find [in his favor]."  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (citations omitted).

In evaluating a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.  The court must "eschew making credibility determinations" at the summary judgment stage.  *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2017).  However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted).  "[C]onclusory assertions offered without any evidentiary support do not establish a genuine issue for trial."  *Wang v. Wash. Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 63 (D.D.C. 2016) (citing *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999)).

## II.    ANALYSIS

The facts of the case are set out in detail in the court's September 30, 2019 Memorandum Opinion. (Mem. Op. at 2–8.)  Omwenga is a Black woman from Kenya who was employed by UNF as a compliance officer.  (*Id.* at 2.)  After other UNF employees complained about working with Omwenga, her supervisor David Burton spoke with her on February 5, 2019, regarding her communication skills and tone.  (*Id.* at 3–6.)  A week later, Burton attended a meeting with Omwenga and others on a project team, during which Burton called a "timeout" because of Omwenga's behavior.  (*Id.* at 7–8.)  UNF then terminated Omwenga on February 18, 2015, allegedly for her unprofessional behavior.  (*Id.* at 8.)  Omwenga claims she engaged in protected activity under the FCA and NDAA by reporting UNF's allegedly fraudulent activities on government contracts in December 2014, January 2015, and on February 4, 2015 (*Id.* at 5), and was terminated in retaliation for her protected activity.  She asserts that UNF's proffered reason for her termination is pretextual.[1]  (*Id.* at 8.)

### A.  **Retaliation Claims**

Omwenga claims that in terminating her for engaging in protected activity, UNF violated both the FCA and NDAA anti-retaliation provisions.  This court held in its September 30, 2019 Memorandum Opinion that a reasonable jury could infer retaliation based on Omwenga's prima facie case and evidence of pretext.  (*Id.* at 16–25.)  UNF argues that two incorrect premises underlie the court's finding: UNF's failure to follow its progressive discipline policy for Omwenga, and UNF's discipline and temporal proximity between Omwenga's termination and her protected activity.  (ECF No. 55-1, Def. Br., at 4–5.)  UNF moves for reconsideration on the

---

[1] Omwenga also alleged Title VII and DCHRA claims, on which the court granted summary judgment for UNF.  (Mem. Op. at 10–16.)

ground that these findings were clear error because the court failed to consider controlling decisions and misunderstood the parties' evidence.  (*Id.*)

      1.  <u>Progressive Discipline Policy</u>

UNF argues that the court's finding that UNF had not followed its progressive discipline policy was based on two incorrect factual premises: that Omwenga's supervisor did not refer her for coaching, as suggested by the discipline policy, and that UNF's Executive Director testified that he could only recall one person other than Omwenga being fired without following the progressive discipline policy.  (*Id.* at 6.)

UNF's characterization of the court's ruling regarding pretext omits mention of several other undisputed facts that underlie the ruling.  It is undisputed that Omwenga was first disciplined, through verbal counseling about her communication and professionalism skills, about one week before she was fired.  (Mem. Op. at 6–7.)  The court found this inconsistent with the guidelines in the UNF employee handbook encouraging UNF to work with employees.  (*Id.* at 22.)  It is also undisputed that UNF did not give Omwenga a written warning, decision-making leave, or an investigation suspension, which are all suggested disciplinary actions if an employee must be disciplined after verbal counseling.  (*Id.*)  These additional undisputed facts showed that UNF did not follow its progressive discipline policy in disciplining and ultimately firing Omwenga, and were part of the court's basis for finding that a reasonable jury could infer retaliation based on all of the evidence.

In deciding that a reasonable jury could infer retaliation, the court noted that UNF declined to refer Omwenga for coaching, even when it was suggested by the HR director.  (Mem. Op. at 22–23.)  UNF contends that the court's evaluation of the evidence regarding coaching is contradicted by the record; it asserts that the progressive discipline policy refers to only internal

coaching and that the unfollowed HR recommendation was for an outside coach.  (Def. Br. at 6–
7.)  Therefore, it argues, Omwenga was not entitled to outside coaching under the progressive
discipline policy.  (*Id.*)

While the parties do not dispute that the discipline policy refers to coaching by
"immediate supervisors" rather than HR's suggested external coach, the court did not suggest
that UNF was required to provide an external coach.  It did, however, consider the undisputed
evidence that Omwenga's supervisor rejected HR's suggestion that Omwenga receive coaching
on her communication skills and instead disciplined her through verbal counseling the next day.
(Mem. Op. at 22–23.)  On this basis, a reasonable fact-finder could conclude that after
identifying problems with her performance, UNF failed to work with Omwenga, including
providing her with coaching as suggested by its policy, before taking disciplinary action.
Moreover, it is undisputed that UNF did not follow any of the other suggested steps in its
progressive discipline policy, such as written warning, decision-making leave, and investigation
suspension.  (*Id.* at 6–7.)  Therefore, the court's evaluation of the evidence regarding coaching
and deviation from UNF's non-mandatory progressive discipline policy was consistent with the
record.

UNF further argues that the court misunderstood and should not have relied on the
testimony of UNF's Executive Director about deviations from the discipline policy.  (Def. Br. at
7–10.)  UNF argues that the court interpreted the testimony as relating to any discipline, but it
related only to terminations without written warnings.  (*Id.* at 7–8.)  But Omwenga did not
receive a written warning; therefore, the testimony is consistent with the court's finding that
Omwenga's termination was not consistent with UNF's practice of providing written warnings
before termination.  And, as the court explained in its September 30, 2019 Memorandum

Opinion, "deviations from standard procedures may . . . give rise to an inference of pretext at the summary-judgment stage."  (Mem. Op. at 22 (quoting *Jones v. Ottenberg's Bakers, Inc.*, 999 F. Supp. 2d 185, 191 (D.D.C. 2013).)

UNF also argues that the Executive Director's deposition testimony was incorrect because other testimony shows that a third person was fired after UNF failed to follow its progressive discipline policy.  (Def. Br. at 8–10.)  The court did not address this piece of record evidence, which was referenced only in UNF's reply, in its September 30, 2019 Memorandum Opinion.  (*See* Mem. Op. at 21–23.)  While this evidence shows that UNF has deviated from its progressive discipline policy at least three times, it does not undercut the other evidence indicating pretext, including that Omwenga's supervisor rejected HR's suggestion of coaching for her communication skills, Omwenga was disciplined a week before UNF fired her, and her termination was temporally close to her last protected activity.  (*Id.* at 22–23.)

Taken together, the evidence shows that UNF gave Omwenga the verbal counseling step of the progressive discipline policy one week before she was fired.  UNF argues that failing to follow a progressive discipline policy cannot support an inference of pretext, but cites no controlling law in support of this argument.  (Def. Br. at 5, n.1 (citing *Ball v. George Wash. Univ.*, No. 17-cv-507, 2019 WL 1453358, at *13 (D.D.C. Mar. 31, 2019); *Long v. Endocrine Soc'y*, 263 F. Supp. 3d 275, 286 (D.D.C. 2017); *Walker v. Child.'s Nat'l Med. Ctr.*, 236 F. Supp. 3d 136, 147 (D.D.C. 2017); *Wilkerson v. Wackenhut Prot. Servs., Inc.*, 813 F. Supp. 2d 61, 67 (D.D.C. 2011)).)  Moreover, in its September 30, 2019 Memorandum Opinion, the court considered both that UNF's discipline policy did not require it to follow each step, and that failure to follow a progressive discipline policy is generally given less weight.  (Mem. Op. at 22–23.)  The court found, however, that based on all the facts and circumstances surrounding

Omwenga's discipline and termination, in addition to the temporal proximity discussed below, a reasonable jury could infer UNF's reasons for terminating Omwenga were pretextual.

2. Temporal Proximity

UNF also argues that the court's findings regarding the temporal proximity to protected activity were incorrect.  (Def. Br. at 10–12.)  First, UNF argues that Omwenga has not shown temporal proximity because she was fired after her fifth instance of protected activity.  UNF contends that protected activity could not be the motivation behind her termination because, if it were, UNF would have terminated her after her earlier protected activity.  (*Id.*)  But repeated protected activities, such as attempts to address fraud over several years, do not necessarily undercut a reasonable inference of retaliation.  *See Pencheng Si v. Laogai Rsch. Found.*, 71 F. Supp. 3d 73, 102 (D.D.C. 2014) (holding that plaintiff stated a claim for retaliation where he first reported possible fraud in 2005 and was fired in 2008).

Second, UNF argues that the court found that temporal proximity between protected activity and termination alone could support an inference of pretext, and this finding was contrary to controlling law.  (Def. Br. at 11–12 (citing *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 574 (D.C. Cir. 2019).)  But the court did not find pretext based on temporal proximity to protected activity alone.  As discussed above, the court found pretext based on UNF's conduct in disciplining Omwenga, her sudden termination, and the temporal proximity to her protected activity.  (Mem. Op. at 21–23.)

Although it was a close case, the court found that the evidence, taken in its totality, was sufficient for a reasonable fact-finder to infer retaliation in violation of the FCA and NDAA.  (*Id.* at 24–25.)  And none of the arguments UNF raises in its motion for reconsideration shows an intervening change in the law, discovery of new evidence, or clear error in the court's Opinion.

*See Estate of Klieman*, 923 F.3d at 1122.  Therefore, UNF has not carried its burden to show that "justice requires" reconsideration of the September 30, 2019 Memorandum Opinion as it relates to pretext.

### B.  Wrongful Discharge

UNF argues that Omwenga pleaded a cause of action based on wrongful discharge in violation of D.C. public policy only on the basis of a public policy against conflicts of interest and not a policy against gross fund mismanagement.  (Def. Br. at 12–15.)  UNF further argues that a claim based public policy against gross fund mismanagement fails as a matter of law. (Def. Br. at 15–18.)

Omwenga pleaded a claim for wrongful discharge in violation of public policy against gross fund mismanagement.  Count Two of her Complaint pleads that Omwenga was terminated in violation of public policy against conflicts of interest, and specifically details the public policy against conflicts of interest.  (ECF No. 31, Third Am. Compl., ¶¶ 158–164.)  The count also incorporates the facts from the rest of the Complaint that allege in detail UNF's misuse of government funds and states that Omwenga's termination "violated public policies against termination of employment of employees who resist or oppose activities by their employers . . . that violat[e] regulations."  (*Id.* ¶¶ 105–124, 158, 164.)  This is not a case where the plaintiff raised new factual predicates for a claim on motion for summary judgment.  *Cf. Trudel v. SunTrust Bank*, 924 F.3d 1281, 1286 (D.C. Cir. 2019) (explaining that plaintiff could not pursue a legal theory on summary judgment that was based on conduct not pleaded in the complaint); *Bean v. Perdue*, 316 F. Supp. 3d 220, 226 (D.D.C. 2018) (same); *DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 84 (D.D.C. 2007) (same).  While Count Two does not explicitly detail gross fund mismanagement as the basis of the wrongful discharge in violation of public policy claim,

"complaints need not plead law or match facts to every element of a legal theory." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000) (internal quotation and citations omitted); *see also MacIntosh v. Bldg. Owners & Managers Ass'n Int'l*, 355 F. Supp. 2d 223, 228 (D.D.C. 2005) (explaining a plaintiff need not cite a specific statute that supports the public policy allegedly violated in a wrongful discharge case).  Under this liberal standard, Omwenga's complaint sufficiently pleads the facts necessary to state a claim for wrongful discharge in violation of District of Columbia public policy against gross fund mismanagement—even if the law was not explicitly pleaded in Count Two.

While Omwenga technically pleaded a claim for gross fund mismanagement, UNF correctly points out that at summary judgment neither party briefed in detail whether 5 U.S.C. § 2302(b)(8)(A) provides a basis for wrongful discharge in violation of public policy.  (Def. Br. at 14.)  Omwenga raised the issue by citing a case regarding conflicts of interest that references 5 U.S.C. § 2302, which discusses the policy against gross fund mismanagement.

UNF argues that Omwenga failed to show that she had more than a "reasonable belief" that she was reporting violations of the law, and therefore under controlling law, her wrongful discharge in violation of public policy claim fails.  (Def. Br. at 17.)  The D.C. Court of Appeals has held that it is not enough for a plaintiff to show only that she had "reasonable belief" that her employer was violating the law; she must show that she complained about an actual violation. *Rosella v. Long Rap, Inc.*, 121 A.3d 775, 779 (D.C. 2015) (upholding jury instruction that it must find the conduct complained of was actually illegal); *see also Herron v. Fannie Mae*, No. 10-cv-943, 2016 WL 1177918, at *22 (D.D.C. Mar. 8, 2016), *aff'd*, 861 F.3d 160 (D.C. Cir. 2017) (holding that plaintiff "must have disclosed an actual violation of the policy . . . regardless of

whether she reasonably believed that her alleged criticisms disclosed [her employer's] gross waste or mismanagement").

The court held that a reasonable jury could find Omwenga was "fired for reporting what she believed to be gross fund mismanagement," (Mem. Op. at 25), but the record contains no evidence that her allegations of gross fund mismanagement were actual violations. Moreover, Omwenga did not respond to this argument, and the court treats it as conceded. *See, e.g.*, *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 139 n.7 (D.D.C. 2017). Therefore, Omwenga's claim for wrongful discharge fails as a matter of law, and UNF has shown clear error in the September 30, 2019 Memorandum Opinion. The court will grant UNF's motion for reconsideration as to this claim. Because the court grants UNF summary judgment on this basis, it need not reach the additional arguments UNF raised regarding wrongful discharge in violation of public policy.

## III.   CONCLUSION

For the stated reasons, the court hereby GRANTS in part and DENIES in part Defendant's motion for reconsideration. A corresponding Order will issue separately.

Date:  September 29, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge